01
02
03
04
05            UNITED STATES DISTRICT COURT
           WESTERN DISTRICT OF WASHINGTON
06                     AT SEATTLE

07  JANE LABORDE,                     )   CASE NO. C05-0829-RSM
                                      )
08         Plaintiff,                 )
                                      )
09         v.                         )   REPORT AND RECOMMENDATION
                                      )   RE: SOCIAL SECURITY
10  JO ANNE B. BARNHART, Commissioner )   DISABILITY APPEAL
    of Social Security,               )
11                                    )
           Defendant.                 )
12  _____ )

13      Plaintiff Jane LaBorde proceeds through counsel in her appeal of a final decision of the

14  Commissioner of the Social Security Administration (Commissioner). The Commissioner denied

15  plaintiff's application for Supplemental Security Income (SSI) and Disability Insurance (DI)

16  benefits after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's

17  decision, the administrative record (AR), and all memoranda of record, it is recommended that this

18  matter be REMANDED for further administrative proceedings.

19                        **FACTS AND PROCEDURAL HISTORY**

20      Plaintiff was born on XXXX, 1956.[1] She completed the tenth grade and did not attain a

21  _____

22      [1] Plaintiff's date of birth is redacted back to the year of birth in accordance with the
    General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -1

GED. Plaintiff received training as a certified nurse's assistant. Her past work experience includes employment as a certified nursing assistant, an occupational therapy assistant, a physical therapy assistant, and a laborer.

Plaintiff applied for SSI and DI in August 2001, alleging disability since April 13, 2001 due to hepatitis C, depression, pain disorder, and left eye blindness. Her application was denied initially and on reconsideration, and she timely requested a hearing.

An ALJ held a hearing on May 4, 2004, taking testimony from plaintiff and a vocational expert, Olof Elofson. (AR 515-564.) On July 26, 2004, the ALJ issued a decision finding plaintiff not disabled. (AR 15-26.)

Plaintiff appealed the ALJ's decision. On March 12, 2005, the Appeals Council denied plaintiff's request for review. (AR 5-7.) Plaintiff appealed this final decision of the Commissioner to this Court. The parties agree that the matter should be remanded for further administrative proceedings as set forth below.

**JURISDICTION**

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

**DISCUSSION**

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not engaged in substantial gainful activity since her alleged onset date. At step two, it must be

---

official policy on privacy adopted by the Judicial Conference of the United States.

determined whether a claimant suffers from a severe impairment. The ALJ found plaintiff's hepatitis C, depression, pain disorder/somatoform disorder and blindness in the left eye to be severe impairments. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that plaintiff's impairments did not meet or equal the criteria for any listed impairments. If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found plaintiff able to perform simple, repetitive tasks with limited public and co-worker contact, and was exertionally limited to light work, thus precluding a return to her past work. She has no binocular vision. If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. Based on the testimony of a vocational expert, the ALJ concluded there were a significant number of jobs in the national economy plaintiff could perform and, therefore, that she was not disabled.

Vocational Testimony

The parties agree that certain errors at step five of the sequential evaluation process require remand and reconsideration.

1.  Vision

One of plaintiff's severe impairments is blindness in her left eye. (AR 17.) In posing a hypothetical, however, the ALJ apparently misspoke and, although noting plaintiff had been blind in the left eye since childhood, asked the vocational expert to assume <u>binocular</u> vision. (AR 559.) Although the error might seem obvious, it is not appropriate to assume the vocational expert

correctly understood the hypothetical, because the expert testified, in response to the hypothetical, that plaintiff could perform the job of bottling-line attendant, a position that requires "frequent use of depth perception." *Dictionary of Occupational Titles* 920.687-042 (4th ed. 1991).

2. <u>Consistency with Dictionary of Occupational Titles (DOT)</u>

The ALJ found that plaintiff "has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case." (AR 25.) The second job the vocational expert found appropriate for plaintiff to perform was assembler, DOT job number 782.684-058 (AR 560), with a Specific Vocational Preparation Level (SVP) of 3. However, a job with an SVP of 3 is semi-skilled, not unskilled work, *see* Social Security Ruling (SSR) 00-4p, and, therefore, in conflict with the ALJ's finding that plaintiff did not have transferrable skills. The vocational expert either identified the assembler job in error, or had in mind an assembler job that departed from the DOT's description of the job. If the latter is the case, the record does not include either a "reasonable explanation" for the inconsistency between the job as proposed and the job as described in the DOT, *id.*, or "persuasive evidence" to support the deviation, *Johnson v. Shalala*, 60 F.3d 1428, 1425 (9th Cir. 1995).

The step five finding that plaintiff was capable of performing other significant work lacks the support of substantial evidence. If additional vocational evidence is obtained on remand, the ALJ should assure that any conflict with the DOT is reasonably explained.

<u>Opinion of Examining Psychologist</u>

The parties agree that the ALJ should re-evaluate the opinion of Dr. Frank Hammer, an examining psychologist. Dr. Hammer performed three examinations of plaintiff for the state agency, as well as a report and examination following the administrative hearing at the request of

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -4

plaintiff's attorney. (AR 171-83, 492-510.) Where not contradicted by another physician, a treating or examining physician's opinion may be rejected only for "clear and convincing" reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where contradicted, a treating or examining physician's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

In discussing Dr. Hammer's opinions, the ALJ stated:

> I give no weight to his conclusions for the following reasons. First, Dr. Hammer is somewhat the psychologist *du jour* of late for this law firm, with his reports nearly universally commissioned by Counsel in support of disability applications, with a universal finding of profound limitations, which certainly detracts from the weight to be given such opinions in any given case. *Saelee v. Chater*, 94 F.3d 520 (9th Cir. 1996), *cert. denied,* 519 U.S. 1113 (1997). Specifically, the final evaluation at Exhibit 13F was sought by Counsel and performed *after* the hearing, meaning Dr. Hammer had a read of the entire proceedings and could adjust his conclusions accordingly, in favor of the claimant. This examination was not in an attempt to seek treatment for symptoms, but rather, through Counsel referral and in connection with an effort to generate evidence for the current appeal. Further, he was presumably paid for the report. Although such evidence is certainly legitimate and deserves due consideration, the context in which it was produced cannot be entirely ignored. *Saelee, supra.*

(AR 21.)

A determination that utilizes speculation founded on information outside the record deprives a claimant of the ability to cross-examine or rebut the assumptions relied on, and is impossible to review on appeal. *Burkhart v. Barnhart*, 856 F.2d 1335, 1341 (9th Cir. 1988). *See also Miles v. Chater*, 84 F.3d 1397, 1399-1401 (11th Cir. 1996) (remanding a case to a different ALJ because of comments that a doctor's determinations "almost invariably" were favorable to the claimant's attorney's clients). Furthermore, "in the absence of other evidence to undermine the credibility of a medical report, the purpose for which the report was obtained does not provide

01  a legitimate basis for rejecting it." *Reddick v. Chater*, 157 F.3d 715, 727 (9th Cir. 1998). Plaintiff

02  also raises other criticisms of the ALJ's treatment of Dr. Hammer's report, arguing that the timing

03  and consistency of the report enhanced, rather than detracted from, its weight, *see* 20 C.F.R. §

04  404.1527(d)(4), that the ALJ failed to identify any actual improprieties in the preparation of the

05  report, and that the ALJ erroneously stated that Dr. Hammer's opinions lacked objective support

06  and erroneously discounted Dr. Hammer's consideration of her physical condition in formulating

07  his opinion.

08  On remand, the ALJ should reevaluate Dr. Hammer's opinions based on legally sufficient

09  grounds.

### Evaluation of Mental Condition

11  Another issue on which the parties agree is that, on remand, the ALJ should follow 20

12  C.F.R. §§ 404.1520a and 416.920a when evaluating plaintiff's mental condition, rating the severity

13  of her mental impairments by evaluating pertinent symptoms, signs, and laboratory findings that

14  substantiate the presence of the impairment(s), and rating the degree of functional limitations in

15  the four broad functional areas: activities of daily living; social functioning; concentration,

16  persistence, or pace; and episodes of decompensation.

### Credibility Assessment of Plaintiff

18  Absent evidence of malingering, an ALJ must provide clear and convincing reasons to

19  reject a claimant's testimony. *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). *See*

20  *also Thomas*, 278 F.3d at 958-59. In finding a social security claimant's testimony unreliable, an

21  ALJ must render a credibility determination with sufficiently specific findings, supported by

22  substantial evidence. "General findings are insufficient; rather, the ALJ must identify what

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -6

testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834. "We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings." *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003). "In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The parties agree that the ALJ should reassess plaintiff's credibility upon remand.

<u>Assignment to Different ALJ</u>

The Appeals Council should determine the assignment of the case on remand.

**CONCLUSION**

For the reasons described above, this matter should be REMANDED for further administrative proceedings. A proposed order accompanies this Report and Recommendation.

DATED this <u>10th</u> day of <u>February</u>, 2006.

*[signature]*

Mary Alice Theiler
United States Magistrate Judge
